May it please the court, Daniel Habib, Federal Defenders of New York, on behalf of Andrew Lawrence The government told Congress in support of the Equal Act in 2021 that the 18 to 1 crack to powder ratio is not necessary to achieve law enforcement priorities and actually frustrates them because it makes folks unwilling to cooperate with police and brings disrepute on the criminal justice system that again calls into question the motives of law enforcement officers. And so finally we have this guidelines themselves are not mandatory for the court. Certainly the Justice Department's testimony to Congress that Congress rejected is not binding on the court, right? No, of course not, Your Honor. However, when it comes to the question of why the district court did take this into consideration, this word said, like, okay, you've made a policy argument that I should not apply the guideline as it's written. And she decided not to do that. And that's all the judge did, Your Honor. The judge noted her awareness of the party's joint request for a variance from the crack to powder range and then gave no further attention to the issue. And it's our submission that where both parties have identified, again, serious deficiencies with the guideline that are not really debated on the merits, certainly not debated on the merits in this court, deficiencies that have been recognized not only by the Department of Justice, but by the majority of district courts in this district and nationwide to consider the issue, have requested a variance and have made it not only the basis of a joint request, but have also told the court in very concrete ways why adherence to the 18-to-1 ratio affirmatively disturbs statutory sentencing objectives. So the Justice Department adopted this policy of asking for the variance in 2021. Is that right? I believe so, but the government may know better. Well, whatever. It's recently. Before 2021, were the sentences that followed the guidelines, were they substantively unreasonable, or it matters that the Justice Department has adopted the policy? What matters is the substance of the Justice Department's position. And the substance of the Justice Department's position is that, and I can summarize it briefly, number one, there is no scientific basis for this disparate treatment because the two drugs are simply different forms of the same drug with the same pharmacological properties. One is readily converged to the other. Two, that the ratio disturbs law enforcement objectives because it punishes low-level retail sellers like Mr. Lawrence far more harshly than mid- or high-level suppliers of powder cocaine. And third, which is a point that the Supreme Court has recognized not only in Kimbrough but also in Dorsey, the application of the 18-to-1 ratio, in particular as to black defendants, subverts the statutory objective of promoting respect for the law because it perpetuates the public perception of race-based disparity in federal drug sales. As to black defendants, I mean, if the defendant were white, do you think it would have been appropriate to apply the 18-to-1 ratio? I think the concern with respect to racial disparity is exacerbated in this case because Mr. Lawrence is a black defendant. And so, however, that said, the mere... I mean, you don't have the perception that the sentences are based on a defendant's race, but you're saying that the district court should take that into account. I mean, isn't that the opposite of what you're suggesting? No, Your Honor. The existence of a ratio that results in what, again, multiple actors across the criminal justice system have recognized is disparate sentencing for black defendants who comprise the majority of folks sentenced for federal offenses. Right. That's an argument against the disparity overall. Right. But that would be a reason not to have the disparity in general. But it's not an argument for saying you should treat black and white defendants differently. No, not at all, Your Honor. I'm merely saying that when Judge Cote was sentencing this black man in her courtroom pursuant to a rule of law that the United States believes is, quote, the most visible symbol of racial unfairness in the criminal justice system for the last 35 years, that whether that sentence comports with the procedures necessary and the substance necessary to satisfy Section 3553... So in this case, so setting aside the policy arguments, in this case, what specifically should the district court have said that it did not say in your view? I mean, ordinarily we presume that in sentencing the district court has considered all the arguments. And so what's the special rule that you're asking for? Before the rule that we're asking this court to adopt, which follows directly from this court's decision in Dorvey, is that before applying a guideline that, like the child pornography guideline at issue in Dorvey, is eccentric of unusual provenance and can easily result in unreasonable sentences, the court has to exercise great care. So what does that mean, Judge Park, in the context of this case? The court has to show its work. The court has to explain to the parties who have advised the court of the real risk that mechanical application of the guideline will undermine, not just be separate from or distinct from the statutory objectives, but will actually retard the statutory sentencing objectives. It has to explain why in the court's view that's not true. So, for example, the court could have said what the district court said in the Cox case, the summary order cited in the government's response brief. In that case, the court said, well, actually, I hear your ratio argument. You are the kind of defendant that the Sentencing Commission and Congress had in mind, because you are not a low-level crack dealer. Isn't that similar here? I mean, Judge Cote gave a very detailed description of what she was trying to get at with Mr. Lawrence in particular because of his prior violation of supervised release. And so that individualized analysis seems to me to trump whatever policy argument which she acknowledged and obviously seemed to understand. I agree that she gave some reasons for the sentence. However, she did not specifically address the party's request for a variance from the crack to powder range. And that's the distinction I would draw. She took the crack range as the framework for her sentencing analysis and as she was required to do as the benchmark for the exercise of her discretion. In order to justify that discretionary decision, it's our view that applying this dubious guideline with the great care that this court's precedence demands requires not just an individualized explanation of the sentence, which is always necessary, but explains why you would select as the starting off point for the exercise of that discretion. If the guidelines has an anchoring effect, I would think your position would be that if the crack cocaine disparity is not justified, the district court should never start from a guideline calculator with that disparity. And if they do think that the circumstances of the defendant warrant a greater sentence, you should start from the nondisparity calculation and then maybe go upward based on the individual character. That would be permissible. But you just said a moment ago that the Cox case, it was OK for the district court to say, well, actually, you're the kind of person that should be subject to disparity. Well, so for example, let me try to clarify. One of the arguments that is lodged with respect to the crack powder disparity is that the disparity introduces unwarranted sentencing disparities in violation of Section 3553A6 because it punishes low-level dealers more harshly than mid-level dealers. As to a mid- or high-level dealer like the defendant in Cox, that objection would be beside the point. So that would be for example. So what you're saying is actually that there are some circumstances in which the disparity is justified given the characteristics of a defendant? There are circumstances specific to the crack, specific that are responsive to the deficiencies in the crack guideline that a district court could take account of, yes. Look, I think it's clear in Kimbrough that the district court is not required to vary from the crack guideline. And we don't make that submission. That said, I think it would be hard for— So you have a procedural argument that whenever the district court wants to start from accepting the existing guideline, they need to register their policy disagreement with the Justice Department? No. When the district court—the district court is always required to begin its sentencing analysis by correctly calculating the guideline range. When the guideline at issue is a guideline like the child pornography guideline at issue in Dorvey or like the crack guideline to which Dorvey drew a direct analogy, the court must apply the guideline with great care because otherwise use of that guideline as the benchmark or in this case as the basis for the imposition of a within range term presents a real risk of unreasonable outcomes. And so the court needs to explain why it's making this initial step choice of selecting this guideline. This is not a requirement that would apply to every guideline, obviously not. And if I could take a step back and think about, for example, RETA, the Supreme Court's decision in RETA which talks about the need to explain a sentence, the rationale for accepting a terse explanation of most sentences that are within the guideline range is that in the ordinary case, the guidelines reflect an alignment of the commission's view and the judge's view that a particular sentence is reasonable. That rationale is not present here. And indeed, RETA recognizes that, and this is at page 357 of the decision, when the defendant lodges a direct attack on the guideline itself and contends that the guideline itself undermines the purposes of sentencing set forth in 3553A, the judge will normally go on and explain why in the judge's view that argument doesn't hold. But certainly the Supreme Court is not obligated to do that just because the defendant has lodged an objection to a guideline, right? Your Honor, it's our position that in particular in light of, for example, the Seventh Circuit says it is obligatory with respect to this guideline. I understand that's not. Although in the Seventh Circuit case, the district court, I mean the court of appeals seems to think that the district court just missed that argument, right? Didn't say anything about it. Whereas here we have a colloquy where the district court is saying, where is this recommendation coming from? What's the basis of it? It's a justice department policy. Yes, it's a justice department policy. Okay, I understand. And then she says on the record like they have recommended this based on policy argument and so on. Like it didn't escape her attention, right? I agree that she was aware that the parties had made the argument. I don't read the Seventh Circuit cases quite so narrowly. There are a series, Arbery, Johnson, Morris, all of which reiterate what is a pretty settled Seventh Circuit rule at this point, namely the failure to address a defendant's request, not even a joint request as here, but a defendant's request for a variance to the powder range must be addressed to impose a, as a prerequisite to the imposition of a procedurally reasonable sentence. It's also our view that the Supreme Court has made clear within recent terms in both Concepcion and Golan that district judges have what Golan referred to as, quote, a general obligation to address the party's non-frivolous arguments. And it's difficult to imagine it was necessary for the Supreme Court to say that because that would seem to me to be the sine qua non of judgment. When parties present substantial arguments to you, and as here, this was really the principal argument for a variance and both parties requested a sentence within the powder range, it would seem the most natural thing in the world for the judge not just to say, I've heard the arguments, I understand what the arguments are, but I disagree. And this is why I disagree perhaps, as I indicated to Judge Park, because I think you are the kind of mid-level dealer that the Sentencing Commission or probably Congress had in mind. And I get your points and I understand they're compelling, but how is it an abuse of discretion? How do we get from failure to explain why not to give the variance? And that constitutes an abuse of discretion. Because I don't think we've held that it would be an abuse of discretion to not apply the variance or to not apply the powder guidelines versus the application. I appreciate that, Judge Kahn. The abuse of discretion, to be precise about our position, is not the refusal to vary to the powder range, but we do contend that the sentence was substantively unreasonable and that is part of the reason. But the legal error here is the failure to discharge a district court's standard obligation to address the party's non-frivolous arguments. In the specific context of the crack guideline, it's the district court's failure to exercise the great care that Dorvey says is required when it comes to suspect guidelines. But your argument is a substantive procedural. It's not a procedural argument that the sentence was substantively unreasonable. But it sounds like you're framing it like a procedural unreasonable. We've argued both, Your Honor. Oh, I know. I'm struggling with, you know, I get your argument that both sides are asking for it. I mean, this is a procedural argument that you're making now, right? That the district court has an obligation to say on the record why it's not. Yes, we are. A variant from the crack powder. Yeah, let me try to be precise about the scope of our position. We are challenging both the procedural and substantive reasonableness of the sentence. Our procedural argument is, just as you've indicated, Judge Menasche, that when it comes to discharging both the general obligation to address the party's arguments and the specific obligation to exercise great care in the application of a questionable guideline like this one, the district judge has a procedural obligation to explain why application of the suspect guideline will not, in fact, as the parties have warned. You said general and you said standard obligation. But, you know, the general rule is we're going to assume that the district court is addressing all the arguments before it unless the record indicates that it didn't understand the arguments. You are saying that actually because this is a suspect guideline or an eccentric guideline, it's in a special class where there is a specific obligation to address it. Yes, because it's simply difficult for me to understand how a judge could discharge the duty of great care, without telling us why it's being followed in the face of a joint submission, that application of the guideline is not just irrational, but is an affirmative hindrance to the achievement of the Section 3553 factors. I will note that this court made a similar point in Jenkins, in holding a within guidelines child pornography sentence substantively unreasonable. It noted in the course of reaching that holding that the district judge did not appear to have addressed or considered the deficiencies in the guideline that had been identified in DOR V. I know. The source of the idea that it's a hindrance, that's from the Justice Department's statements to Congress, right? So it's a hindrance in a couple of ways. It's not just the Justice Department's statements to Congress, Your Honor. So it's in three specific ways. Did the government come here in this case and tell the district court, like, if you imposed the sentence, it would be a hindrance to achieving justice? I mean, they did say it would be sufficient, 21 months would be sufficient but not greater than necessary. I get that. They didn't make this. This is a broader argument. You're saying that's the position of the Justice Department, but it's not like they said that this sentencing would have those implications. So it was the government's position below that a sentence of 21 months was sufficient but not necessary. Therefore, it was necessarily the government's position that the sentence, any sentence within the crack guideline range, which exceeded that number, would have been greater than necessary to satisfy the statutory objectives. That is to say it was the government's necessary position below that a within crack sentence would have violated the parsimony clause. That's number one. Number two, I don't understand the government to have walked back any of the representations that DOJ made to Congress in support of the Equal Act, but let me recite what those are and why there are other specific 3553A problems. One, we have a failure to – the most important one I think is unwarranted sentencing disparities under A6. And the Supreme Court has recognized this too in Kimbrough, for example, that we have low-level retail crack sellers like Mr. Lawrence punished more harshly than mid- or high-level powder suppliers just because he's selling the converted drug rather than the source drug. Two – That's a disparity only if you start from the assumption that the disparate treatment under the guidelines is unjustified, right? Because they are subject to different guidelines ranges. Yes, but the philosophy of both the Controlled Substances Act and the guidelines implementing the Act are that – and I think this is an uncontroversial proposition – higher-level dealers are generally more culpable than retail sellers. And so the person who has access to the amount of powder cocaine that results in the amount of crack that Mr. Lawrence sold is higher up the food chain, right? It's only the low-level supplier who manages to prepare from that powder source this smaller amount that's then sold for retail purposes. So that's one. Number two is – and I really can't stress this enough – Section 3553A2A speaks of the need for the sentence to promote respect for the law. The Supreme Court recognized in Dorvey, recognized in Kimbrough, and the Sentencing Commission has been saying since the 1990s that there is a widespread public perception that black defendants are getting the short end of the stick when it comes to crack sentencing. Adherence to the discriminatory or disparate crack ratio promotes disrespect for the law, not respect for the law, because it contributes to the public perception that the law is segregated on the basis of race when it comes to drug sentencing. And the third Section 3553 deficiency would be the need for – to provide just punishment, deter, and incapacitate. Again, because the assumptions that led Congress to penalize crack more severely than cocaine turn out to be based on bad science and faulty empirical data, or not even data really, but faulty empirical assumptions, adherence to this ratio and sterner punishment for crack offenses – But this idea about faulty data, I mean, it's true that the Sentencing Commission advanced that position, but it didn't persuade Congress, which adjusted the ratio but didn't eliminate it. I mean, you think it's so clear that a court, as a matter of law, should say that it's entirely unjustified? I mean, actually, you said, actually, as long as the district court explains its reasons, it doesn't have to depart from the 18 to 1 ratio. So you're saying it's not entirely unjustified, right? Well, so I will say this. So when I said faulty empirical data, that was giving Congress a little too much credit. There were just assumptions that crack was more addictive, that it was more associated with violence, that it posed a greater risk of harm. I mean, was it unconstitutional for Congress to codify the 18 to 1 ratio? Unconstitutional? Yeah. I mean, you can imagine an equal protection challenge, right, in light of sentencing practices. I'm not sure how far off the ground that gets. If we're subjecting it to rational basis review, it's a tougher argument. It's a tougher argument. You can imagine an argument that, you know, even rational basis review is not entirely toothless, and given what we know now, measured against what Congress believed inaccurately to be true in 1986. It lacks even a rational basis. That's a tough row to hoe, right? It's a tough argument to make with respect to any federal statute, but it's far from the showing that I need to make to obtain vacant or in demand of this sentence here. Yeah, I know, but what it has implications for is the idea that the current sentencing guideline reflects the judgment of Congress on this question of what quantities are culpable and how much culpability is associated with them. And so it shouldn't, it doesn't seem obviously unreasonable for a district court to follow the public policy judgments that were made by the Congress, unless, you know, you think that Congress didn't have the authority to prescribe that ratio. That's why I'm asking about whether it was legitimate for Congress to do so. Judgment, actually, precisely the same thing is true of the child pornography guidelines, right? In fact, the specific flaw in the guidelines identified in Door V was direct congressional amendment of the guidelines. And so it's hard to imagine a clearer instance of congressional policy with respect to a guideline. Nonetheless, not only, you know, not insulating the guideline from challenge, but on the contrary, calling for a heightened level of scrutiny because the commission was disabled by the congressional judgment from exercising its characteristic institutional role. Thank you, counsel. You preserved a couple of minutes for a while. We'll hear from the government. Good afternoon and may it please the court. This is a case on plain error review. This is a case where the law of the circuit is clear that a district court does not have to make specific responses to points argued by counsel in connection with sentencing. You were just asked instead to apply a new rule that does not exist in this circuit that does not satisfy the plain error standard. There's nothing about what Judge Cote did that falls outside of what the law requires. She went, in fact, beyond what Bonilla, what this court's precedents require. She did explicitly acknowledge the arguments that were made, the sentences that were requested by both me. She acknowledged them, but she didn't respond to them or explain why she wasn't going to follow the recommendation, right? I don't think that's correct. I think that what she says is you're both asking for an adjusted guidelines calculation. The adjusted guidelines calculation you're both referencing is based off of the crack to cocaine disparity. And then she says, I've heard the party's arguments. I've considered them. I'm imposing a 36-month sentence. I'm doing it for a number of reasons. I'm doing it because it's this defendant's third felony conviction. I'm doing it because it's his second drug conviction. I'm doing it because it's his second federal felony conviction. But why is that an explanation for why you're adhering to the crack powder disparity? That's an explanation about why he's particularly culpable, right? It doesn't explain why you start from a guidelines calculation that didn't take into account the disparity. I don't – I mean, I understand that guidelines have an anchoring effect. Like, I think everybody agrees that they do and that they have – and it's part of the sentencing process. But it's not clear that she just said, all right, the guidelines are this range. I'm going guidelines. When she expressed what she was considering doing before counsel made arguments, she said, I'm thinking I'm going above what the government is asking for, what defense counsel is asking for. And I'm thinking of going above the – I think it's 42 months was the top of that range. I thought – I understood your argument on their procedural – the procedural unreasonableness of the sentence. You're saying that under Bonilla the court was not required to respond to the argument of the disparity of crack cocaine. All the court is required to do is to justify its reasons for its sentence. Their argument is Bonilla was – if I'm pronouncing it correct – was wrongly decided in 2010. What's your response to that? So I think a few things, Your Honor. I think if you're coming in on plain error review and saying the case that exists in a published opinion was wrongly decided, that is exactly how you lose your appeal. But beyond that, I also think that Bonilla's requirements – Bonilla required less from Judge Cote than she did is my other response to that, which is she went further than Bonilla says. I think Bonilla says you could ignore the issue altogether. Under Bonilla, if Judge Cote had said, I've read the submissions. I'm giving a 36-month sentence. These are the reasons for it, then we would still be here saying that's a procedurally reasonable sentence under the controlling law. But again, she went beyond that. We don't just have Bonilla, right? We have Dorvay, and Dorvay says that when you have a guideline that's eccentric and doesn't reflect the careful, empirical analysis of the Sentencing Commission, you need to apply it with great care. The Sentencing Commission has come out and said it doesn't think that the ratio reflected in the guideline is justified. So if that principle applies to any guideline, would it apply to this one? Your Honor, I think a few things. This court has addressed this already in Cox, which we cited in our brief. The court has said that it is plainly within the discretion of the court not to – Kimbrough allows the court to disagree with the guideline, but there's nothing that says the court has to disagree with the guideline. Yeah, but I mean Mr. Hovey was just saying he's not arguing that the district court was obligated to accept the variance, but the obligation is that you need to apply such a guideline with great care, and that at a minimum requires an explanation for why you are adhering to the guideline rather than accepting the joint recommendation to vary downward. I think this goes to a question Judge Park asked, and the question was like what more should she have done? That's what I'm saying. She should have explained why she disagrees with the recommendation to vary downward. And I think she did. I think the moment that you give the reasoning for your sentence, especially when you've said I've actually considered going above the guidelines range, you're not reflexively deferring to the guidelines. What you're doing instead is saying this is the guidelines range, this is the policy judgments of Congress, this is the Sentencing Commission's going with the policy judgments of Congress, and then you, Mr. Lawrence, the defendant in this room, are deserving of a 36-month sentence. You are deserving of that for all of the three months. I just threw in there the policy judgments of Congress, which maybe I suggested before, but the district court doesn't actually say that, but like actually I think the policy judgments of Congress make a lot of sense, and so therefore that's going to be my starting point. She doesn't say that, right? She just says I'm not following your policy argument, and then she proceeds to start from the 18 to 1 disparity. Yes, Your Honor. I think when arguments have been presented and then when the judge rules on the issue, I mean if you're suggesting that a sentence that she had added that doesn't exist in the transcript, but like the extra sentence in the transcript was I've calculated, you know, I understand the argument you're making. I am not going with that guidelines range. I'm going to sentence you to 36 months because of these aggravating factors, the 3553A factors. I think that satisfies it. So they wouldn't be aggravating factors, right, because it would be about whether the guideline itself was justified as a starting point, right? It's not like if you talk about the characteristics of the particular defendant, that's not an explanation for why you're disagreeing with the argument that the crack pattern disparity is unjustified. I don't even hear defense counsel here to be saying that the guideline needs to be calculated differently. I think there's an acknowledgment by everybody that the incorrect – even if both sides are asking for the variance, saying I find the guidelines range to be 15 to 21 months because I'm applying the powder cocaine guideline and that is the guidelines calculation in this case, I think everybody agrees that's incorrect. And so there is a legal obligation to correctly calculate the guidelines, and she did that, and now the question is whether or not she's going to sentence above, within, or below that guidelines range, and that's where 3553A comes in. And so I hear the arguments that have been made about the guidelines. This is, as I started, a case on plain error. This is a case being reviewed on plain error where there is controlling law and where the court's being asked to impose a new rule under it where this court has already said in Cox that that rule is not warranted, and so the decision should be affirmed. So can I ask you this? So you wrote a letter to the district court that said the government submits that a 21-month sentence of imprisonment would be sufficient but not greater than necessary to serve the purposes of sentencing. Do you still believe that? Your Honor, a few things. On the substantive reasonableness point, what the court is looking at is whether or not the sentence that was given was within the permissible range of decisions, whether it damages the administration of justice, whether it's shockingly high or shockingly low. And so our recommendation to the district court doesn't matter in that review. I think there is a wide range of appropriate sentences that should be affirmed. I would also note, and we put this in a footnote, ultimately the aggregate term of imprisonment that the defendant was sentenced to between his indictment and between the supervised release violation was about this. We asked for 21 months in the district court. We would have asked for a greater term of supervised release violation. We adjusted downward because of the sentence that was imposed by Judge Coates. So all things considered, I think the aggregate imprisonment here, which was 42 months for the indictment and the supervised release violation, is fair. Thank you, counsel. We'll hear a vote.  The Department of Justice told Congress that, quote, the disparity in federal cocaine sentencing policy has been the most visible symbol of racial unfairness in the federal criminal justice system for almost 35 years, and it is time to eliminate it. That time is now. The district judge in this case was on full notice of the important substantive concerns, the application of the guideline. Both parties asked her to vary, and it was not asking too much for the district court, when she declined to do so, to tell the parties why. A couple of responses to the government's presentation. One, I think the analysis of this sentence is completely separate from the analysis of the VOSR sentence. Judge Gardefee, in imposing that term, made it clear that his sentence was distinct from Judge Coates. So I think that's off the table. Number two, I want to resist the idea that the plain error standard forecloses our position here. So we made abundantly clear to the district judge our position here. We made it abundantly clear that we wanted the judge to adopt the lower ratio and to vary, and the district judge rejected that request. It's also the case that Bonilla, I mean, that is to say the district court was on notice of our arguments and the government's arguments and simply rejected them. So I'm not sure what else needed to be done. That said, Bonilla, it's not just our position that's wrongly decided. It's distinguishable, because it deals with a different guideline. It deals with a guideline where there was an empirical basis, or sorry, there was a sort of substantive justification for the guideline, and this court made that clear in its subsequent decision in Perez-Frias. The rule that we are urging is a direct application of Dorfee, which says when the guideline is of this type, when the guideline is of the type, not just that it's irrational or arguably a poor policy judgment, but when in the assessment of decision-makers across the spectrum, it affirmatively disserves the statutory sentencing factors, including in this specific case, the judge incurs special procedural responsibility. What do you mean by across the spectrum? I mean, it is the judgment of the Sentencing Commission, but it wasn't the judgment of Congress, and they're also decision-makers. That's true, but Congress has periodically acted to mitigate the effects of the 18 to 1 ratio. I agree that current legislation is what it is, but it's also the case that Congress has consistently ratcheted down the ratio, and there was strong bipartisan support for the Equal Act. But I take your Honor's point. But where you have not only the position of the Sentencing Commission, the position of the executive, the position of the majority of district judges nationwide, because for crack defendants in all boxes on the guideline grid and for crack defendants in this box of the guideline grid, the majority sentence is a downward variance from the crack guideline range. It's difficult for me to see how a judge could honor the duty of exercising great care without at least saying something about why this guideline was being selected as the basis, as the starting point for the exercise of the district judge's discretion. And so BNEA is inapposite for that reason. BNEA is about a guideline that doesn't trigger this same responsibility. I also want to emphasize, again, what it's hard to believe required statement in a Supreme Court opinion, but was stated in two Supreme Court opinions, which is that judges have to address parties' arguments. It's particularly true when it's the party's principal argument and when it affects the entire framework of the sentencing proceeding. And consequently, the rule that we're urging here is not an onerous one. It's one that district judges can easily discharge. And frankly, it's one that district judges should be able to discharge with ease if they have done the prior work of thinking about the guideline with great care and deciding to apply it anyway. If the judge has done that, which is a legal prerequisite to application of the guideline, giving the reasons the judge has already reached should be no heavy lift. Thank you, counsel. Thank you both. We'll take the case under advisory.